United States District Court
Southern District of Texas
**ENTERED**
December 04, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DONALD HARRIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:25-CV-00245 |
| | § | |
| WM. MICHAEL MULVEY, | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Before the Court is Plaintiff Harris's motion to disqualify the Rangel Law Firm as counsel for Defendant. (D.E. 19). Defendant has responded (D.E. 25). For the reasons stated below, Plaintiff's motion to disqualify the Rangel Law Firm is **DENIED**.

### I.   BACKGROUND

This employment discrimination case was filed by Harris on September 16, 2025 alleging that the Diocese harassed him, retaliated against him, and wrongfully terminated his employment after Harris reported violations of a safeguarding policy and opposed certain uses of funds. (D.E. 1, pg. 2; D.E. 28, pg. 2). Harris sues the Defendant for: (1) retaliation, hostile work environment, and sexual harassment in violation of Title VII; and (2) age discrimination in violation of the Age Discrimination in Employment Act. *Id*.

In his motion to disqualify, Harris alleges that the Rangel Law Firm has a conflict of interest in representing Defendant because of (1) pre-engagement communications where Harris shared information with another attorney (Liza Wood) who was associated

with Defendant and (2) the law firm's refusal to issue a certification to him that information given to Wood by Harris was not received or used. (D.E. 19, pg. 1). Harris contends that he attempted to hire attorney Jerry Guerra to represent him in this matter and that Guerra relayed case-specific information to attorney Wood. Wood, who initially represented Defendant in this case (along with the Rangel Law Firm), filed a motion to withdraw which was later granted. (D.E. 18). Harris argues that, because the Rangel Law Firm has not certified to him that Wood never relayed case-specific information to Rangel Law Firm about this case, that the firm should be disqualified.

Defendant responded to Harris' motion to disqualify stating that Harris has never been a client or prospective client of the Rangel Law Firm and that neither Wood nor Guerra have ever shared any information they may have received from Harris to the Rangel Law Firm. (D.E. 25, pg. 3).

## II.  LEGAL STANDARD

Disqualification cases are guided by state and national ethical standards adopted by the Fifth Circuit. *In re American Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992), cert. denied, 507 U.S. 912 (1993). In the Fifth Circuit, one of the sources for the standards of the profession is the canon of ethics developed by the American Bar Association. *In re Dresser Industries, Inc.*, 972 F.2d 540, 543 (5th Cir. 1992). Additionally, courts are to consider the Texas Disciplinary Rules of Professional Conduct because they govern attorneys practicing in Texas generally. See *Federal Deposit Insurance Corporation v. United States Fire Insurance Company*, 50 F.3d 1304, 1312 (5th Cir. 1995). Lastly, the

court also considers, when applicable, local rules promulgated by the court itself. *Id.* Because motions to disqualify are substantive motions which affect the rights of the parties, a party cannot be deprived of its choice of counsel on the basis of local rules alone. *In re Dresser Industries, Inc.*, 972 F.2d at 543; Centerboard Sec., LLC v. Benefuel, Inc., No. 3:15-CV-2611-G, 2016 WL 3126238, at *1–2 (N.D. Tex. June 3, 2016).

The court must give careful consideration to motions to disqualify because of the potential for abuse. *Galderma Laboratories, L.P. v. Actavis Mid Atlantic LLC*, 927 F. Supp. 2d 390, 394-95 (N.D. Tex. 2013) (Kinkeade, J.). Parties may use disqualification motions as "procedural weapons" to advance purely tactical purposes. *In re American Airlines, Inc.*, 972 F.2d at 611. "A disqualification inquiry, particularly when instigated by an opponent, presents a palpable risk of unfairly denying a party the counsel of [its] choosing." *United States Fire Insurance Company*, 50 F.3d at 1316.

A party seeking to disqualify opposing counsel on the ground of a former representation must establish two elements: (1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify and (2) a substantial relationship between the subject matter of the former and present representations. *In re American Airlines, Inc.*, 972 F.2d at 614 (*quoting Johnston v. Harris County Flood Control District*, 869 F.2d 1565, 1569 (5th Cir. 1989), cert. denied, 493 U.S. 1019 (1990)). The party seeking disqualification bears the burden of proving the present and prior representations are substantially related. *National Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, 60 F. Supp. 3d 751, 760 (W.D. Tex. 2014). Usually, courts may

only disqualify attorneys for a conflict of interest if the former client moves for disqualification. *In re Yarn Processing Patent Validity Litigation*, 530 F.2d 83, 88 (5th Cir. 1976). However, there are a few "narrow exceptions," such as if there is an "unethical change in sides...[that is] manifest and glaring." *Id*. at 89; *Clemens v. McNamee*, No. 4:08-CV-00471, 2008 WL 1969315, at *3 (S.D. Tex. May 6, 2008).

"The Fifth Circuit's approach to ethical issues has remained 'sensitive to preventing conflicts of interest.' " *In re ProEducation Int'l, Inc*., 587 F.3d 296, 299–300 (5th Cir. 2009). A "district court is obliged to take measures against unethical conduct occurring in connection with any proceeding before it." *Id*. Yet, "depriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration." *Id*. As such, disqualification is not automatic or mechanical, and is considered in light of "all of the facts particular to the case ... in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights." *Id*. While the "relevant local and national ethical canons provide a useful guide for adjudicating motions to disqualify, they are not controlling." *U.S. Fire Ins. Co*., 50 F.3d at 1314. "A court must take into account not only the various ethical precepts adopted by the profession but also the social interests at stake... [including] whether a conflict has (1) the appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued

participation in the case." *Id.*; *In re MMA L. Firm, PLLC*, 660 B.R. 128, 133–34 (Bankr. S.D. Tex. 2024)

For an attorney–client relationship to be established, "the parties must explicitly or by their conduct manifest an intention to create it. To determine whether there was a meeting of the minds, we use an objective standard examining what the parties said and did and do not look at their subjective states of mind." *Sutton v. Estate of McCormick*, 47 S.W.3d 179, 182 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.); *Maersk Tankers MR K/S v. M/T Swift Winchester*, 655 F. Supp. 3d 554, 559 (S.D. Tex. 2023).

Unlike disqualification brought by a former client, which requires only a showing that "the matters embraced within the pending suit are substantially related to the matters or cause of action wherein the attorney previously represented him[,]" disqualification brought by a former prospective client has not squarely been addressed by the Fifth Circuit. *In re Yarn Processing Pat. Validity Litig.*, 530 F.2d at 89; In re MMA L. Firm, PLLC, 660 B.R. at 134–35.

Related to this issue, the ABA Model Rules provide:

> (a) A person who consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.
> (b) Even when no client-lawyer relationship ensues, a lawyer who has learned information from a prospective client shall not use or reveal that information, except as Rule 1.9 would permit with respect to information of a former client.
> (c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).

>   (d) When the lawyer has received disqualifying information as defined in paragraph (c), representation is permissible if:
>   >   (1) both the affected client and the prospective client have given informed consent, confirmed in writing, or:
>   >   (2) the lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client; and
>   >   >   (i) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and
>   >   >   (ii) written notice is promptly given to the prospective client.

Model Rules of Prof'l Conduct R. 1.18.

Further, Texas Disciplinary Rule of Professional Conduct 1.18 outlines the duties lawyers owe to prospective clients regarding confidentiality and conflicts of interest. It is modeled after the ABA Model Rule on this subject. See ABA Mod. Rule 1.18. V. TEXAS DISCIPLINARY RULE OF PROFESSIONAL CONDUCT 1.18. DUTIES TO PROSPECTIVE CLIENT, 2025 WL 990753. Rule 1.18 attempts to carve out those situations, stating instead that it only applies where a prospective client "consults with a lawyer in good faith about the possibility of forming a client-lawyer relationship." Rule 1.18(a). Indeed, it specifically does not apply where the prospective client meets with a lawyer "for purposes of disqualifying the lawyer." Rule 1.18(a). Still, some things are unavoidable: "Even where no client-lawyer relationship ensues, a lawyer who has learned information from a prospective client shall not use or reveal that information" where it may be harmful to the prospective client. Rule 1.18(b). *Id*.

### III.    ANALYSIS

Harris is not claiming that he formed an attorney-client relationship with Guerra, Wood, or the Rangel Law Firm. At the outset, the Court finds there was no attorney-client relationship formed between Harris and the Rangel Law Firm. Therefore, Harris is not a former client of the Rangel Law Firm.

Furthermore, Harris has not shown that he was a prospective client of the Rangel Law Firm. Harris seems to base his argument regarding disqualification of the Rangel Law Firm on the fact that the firm declined to sign his certification that no pre-engagement information regarding Harris' case was received by the firm. Defendant has submitted the sworn affidavit of Jorge C. Rangel as evidence. In the affidavit, Rangel avers that he never had a client-lawyer relationship with Harris, that Harris was neither a former or prospective client of his firm, and Harris has never consulted with he or the firm at any time. Rangel also averred that neither Guerra nor Wood ever provided him with any information they received regarding Harris. (D.E. 25, pgs. 14-15.

Harris has not shown that the Rangel Law Firm's representation of Defendant creates a conflict of interest that requires disqualification.

### IV.    CONCLUSION

For the reasons stated above, Plaintiff's Motion to Disqualify the Rangel Law Firm as counsel for Defendant (D.E. 19) is **DENIED**.

ORDERED on December 4, 2025.

_____
Julie K. Hampton
United States Magistrate Judge